UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

(1) ANDOVER WOODSCAPE LLC,

        Plaintiff,

    v.

(1) LOUIS INVESTMENTS, LLC c/o VESTA
REALTY and
(2) MARC KULICK,

        Defendants.

Case No. 25-cv-00599-SH

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Andover Woodscape LLC ("**Plaintiff**" or "**Andover**"), by and through its counsel, Hall Estill, alleges as follows as and for its Complaint against defendant Louis Investment, LLC c/o Vesta Realty ("**Vesta**") and Marc Kulick ("**Kulick**" and, together with Vesta referred to collectively as the "**Defendants**" and, together with Plaintiff and the Company referred to collectively as the "**Parties**") in the captioned action (the "**Action**).

## NATURE OF ACTION

1. This Action arises from Defendants' breaches of the Operating Agreement of Woodscape Investors, LLC (the "**Company**"), dated March 3, 2023 (the "**Operating Agreement**"), as well as their blatant breaches of fiduciary duties owed to the members of the Company, including Plaintiff. To this end, in direct contravention of Defendants' contractual and fiduciary obligations, Defendants surreptitiously created and issued a new class of preferred equity ownership in the Company -- without any disclosure to, or consent from, Plaintiff -- thereby completely restructuring the Company's ownership and control framework. Such an unauthorized action materially diluted Plaintiff's ownership interest transferred substantial control rights to a

third party, and fundamentally undermined the economic expectations that Plaintiff bargained for under the Operating Agreement and related agreements of the Company.

## **PARTIES**

2.      Plaintiff is a Florida limited liability company having an address at 2385 NW Executive Center Drive, Suite 240, Boca Raton, Florida 33431. Robert Stone ("**Stone**") is the manager of Plaintiff.

3.      Plaintiff is a member of the Company and is the holder of a 27.1540900% interest in the Company (the "**Andover Ownership Interest**").

4.      Vesta is a Kansas limited liability company having an office at 6911 S. 66th E. Ave., Suite 100, Tulsa, Oklahoma 74133.

5.      Kulick is an individual having an address at 6911 S. 66th E. Ave., Suite 100, Tulsa, Oklahoma 74133.

## **JURISDICTION AND VENUE**

6.      The Court has jurisdiction over the subject matter of this Action since the principal place of business of Defendants, the Company, and its principal asset, is located in Tulsa, Oklahoma, where the actions of Defendants occurred.

7.      In addition, jurisdiction is proper pursuant to 28 U.S.C. §1332 in that diversity of citizenship exists between the Parties and the amount in controversy, exclusive of interests and costs, is in excess of $75,000.00.

8.      Tulsa County is the proper venue for this Action since: (i) it is the county of Defendants' and the Company's principal place of business; and (ii) the Operating Agreement provides that Tulsa County shall be the place of jurisdiction in any matter arising out of the Operating Agreement.

9.      Pursuant to the Operating Agreement, the laws of the State of Delaware govern this Action.

## FACTUAL STATEMENT

**A.      Background**

10.      In or around April of 2023, Plaintiff was approached by Kulick, regarding a potential investment opportunity in the Company, which was formed for the purpose of operating and owning a property known as "WoodScape Apartments," located at 4200 North Meridian Avenue, Oklahoma City, Oklahoma 73112 (the "**Property**").

11.      Stone, on behalf of Plaintiff, made a $6,000,000.00 investment in the Company which was the agreed-upon investment threshold under the Operating Agreement, as amended by an Economic Agreement between the Parties, dated April 10, 2023 (the "**Economic Agreement**").

12.      Pursuant to the express terms of the Economic Agreement, the "threshold" for Plaintiff's investment in the Company was $6,000,000.00 (the "**Stone Investment**").

13.      In return for the Stone Investment, Stone received the Andover Ownership Interest on behalf of Plaintiff.

14.      In addition to the Andover Ownership Interest, Stone, on behalf of Plaintiff, also received certain material approval rights, including an express approval right limiting Vesta's ability to sell, transfer, assign, convey, exchange, or otherwise dispose of material portions of the Property (the "**Andover Approval Rights**").

15.      Moreover, based on the Stone Investment, Kulick provided the Andover Approval Rights to ensure that the Company's sole asset -- the Property -- remained intact and would not be sold or transferred without the express approval of Stone.

16.    For the next two (2) years, the Company continued to operate under the terms of the Operating Agreement. Notably, during this period, neither Plaintiff nor Stone ever received any disclosure regarding the addition of new members of the Company.

17.    Thereafter, in March of 2025, without prior notice, Plaintiff discovered through an unexpected encounter with a third-party named 7Acre Investment ("**7Acre**"), that Defendants had unilaterally accepted an undisclosed investment in the Company from 7Acre in exchange for certain material preferred equity interests and rights.

18.    Specifically, in connection with this transaction, 7Acre, for its investment in the Company, received the benefit of a new and unauthorized preferred equity investment in the Company (the "**7Acre Preferred Equity Investment**").

19.    As part of the 7Acre Preferred Equity Investment, 7Acre received the benefit of, *inter alia*, (i) an entirely separate preferred equity ownership class in the Company; (ii) a preferred equity distribution return of fifteen (15%), an amount that is more than seven (7%) percentage points in excess of the distribution rights of Plaintiff; and (iii) the underlined_unrestricted right to sell the Property in December of 2025 without the approval of Plaintiff (the "**Improper Sale Right**").

20.    Upon information and belief, the 7Acre Preferred Equity Investment was created and vested in June of 2023.

21.    Upon information and belief, Defendants personally benefited from the funds that were provided by 7Acre pursuant to the 7Acre Preferred Equity Investment.

22.    Upon information and belief, 7Acre holds a 24.00% preferred equity interest in the Company.

23.    As detailed below, Defendants have breached the Operating Agreement and the Approval Rights Letter, dated April 10, 2023 (the "**Approval Rights Letter**") by, *inter alia*,: (i)

4

permitting the creation of the 7Acre Preferred Equity Investment without an approved amendment to the Operating Agreement or the consent of Plaintiff; and (ii) failing to notify the members of the Company, including Plaintiff, before accepting an Additional Capital Contribution (as defined below) from 7Acre.

**B.      The Operating Agreement**

24.      Pursuant to the Operating Agreement, the Company was formed for the purpose of owning and operating the Property.

25.      At all relevant times, Vesta was the Manager of the Company (the "**Manager**").

26.      Kulick is the sole manager of the Manager.

27.      Pursuant to Paragraph 5.2 of the Operating Agreement, the Manager has an <u>express obligation</u> to act in good faith with respect to controlling, performing, and managing all business, affairs, actions, and decisions of the Company.

28.      Pursuant to Paragraph 6.2 of the Operating Agreement, in the event that the Company required additional capital, Vesta was obligated to first engage in a specific and defined process which provides that, "if and when Manager determines from time to time that an additional Capital Contribution is necessary or desirable (each, an "**Additional Capital Contribution**"), then an Additional Capital Contribution shall be made on the terms and conditions in this § 6.2. []."

29.      Specifically, Vesta was obligated to: (i) make a Capital Call to all members[1]; (ii) wait five (5) days for each member to present their respective share of the contribution, and if a member does not present their respective share, then the amount not funded becomes a stated

---

[1] "<u>Capital Call</u>" is defined in the Operating Agreement as "a notice by Manager to all Members that contains (i) the required Additional Capital Contribution, (ii) every Member's Additional Capital Contribution Share, and (iii) the deadline for making such Additional Capital Contribution."

deficiency; (iii) notify the members as to the amount of any deficiency and that the members can elect to fund the deficient amount; and (iv) if there is still a remaining deficiency, then Vesta has discretion to cover the deficiency by any means or methods in Vesta's discretion.

30.    In addition, pursuant to Paragraph 11.6 of the Operating Agreement, "any amendment that changes the Ownership Percentage or any similar item of a Member shall require such Member's prior consent."

31.    To this end, Paragraph 11.6 of the Operating Agreement provides that, "this Agreement may not be amended except in writing by Manager and the affirmative vote of a Majority Interest[2]; provided, however, that any amendment that changes the Ownership Percentage[3] or any similar item of a Member shall require such Member's prior consent."

32.    Finally, pursuant to Paragraph 8.2 of the Operating Agreement, a member can transfer up to twenty-five percent (25%) of the ownership interests in a Member but only as long as there is "no change in Control[4] of such Member."

**C.    The Approval Rights Letter**

33.    As noted above, the Approval Rights Letter was provided to Stone and serves as an additional agreement among the Parties that is designed to govern control, approval rights, and exit procedures of the members and managers of the Company.

---

[2] "Majority Interest" is defined in the Operating Agreement as "Members (or a Member, if applicable) whose total Ownership Percentage exceeds fifty percent (50%)."
[3] "Ownership Percentage" is defined in the Operating Agreement as "for each Member, a fraction expressed as a percentage, (i) the numerator of which is the aggregate Capital Contributions made by such Member up to and including such time, and (ii) the denominator of which is the aggregate Capital Contributions made by all Members up to and including such time."
[4] "Control" is defined in the Operating Agreement as "possessing, whether directly or indirectly, the power to direct or cause the direction of the management and policies of an Entity, whether through owning voting securities, by contract, or otherwise; provided, however, that a Person may still Control such Entity notwithstanding that one or more third parties have the right to participate in major decisions of such Entity."

34.     Pursuant to Paragraph 3 of the Approval Rights Letter, Vesta, "shall not cause the Company or any Subsidiary to take any action listed without obtaining Stone's prior written approval (which shall not be unreasonably withheld, conditioned, or delayed)."

35.     Moreover, Paragraph 3(11) of the Approval Rights Letter expressly prohibits Vesta from causing the Company from "sell[ing], transfer[ing], assign[ing], convey[ing], exchange[ing], or otherwise dispos[ing] of a material portion of the Property" without the written consent of Stone.

36.     Finally, pursuant to Paragraph 4 of the Approval Rights Letter, "from and after the Closing, [Vesta] shall not cause Promote Holder to take: (a) any action listed in § 3 (but modified to apply to solely Promote Holder and not the Company, any Subsidiary of Company, or any Subsidiary of Promote Holder); or (b) any action listed below, in each case without obtaining Stone's prior written approval (which shall not be unreasonably withheld, conditioned, or delayed)."

**D.**     **Defendants' Breaches of the Operating Agreement and the Approval Rights Letter**

     **I.**     **Breaches of the Operating Agreement**

37.     It is undisputed that the 7Acre Preferred Equity Investment creates a separate class of ownership in the Company that cannot be considered an Additional Capital Contribution under the Operating Agreement since it materially altered the rights, control, and economic interests within the Company.

38.     As an initial matter, Defendants' actions were not taken in good faith as they had full knowledge that the creation of the 7Acre Preferred Equity Investment materially impacted the rights of Plaintiff and thus required disclosure to all members of the Company, as well as an approved amendment to the Operating Agreement.

39.    Defendants knowingly provided 7Acre with preferential treatment to Plaintiff's detriment by creating and issuing a new class of preferred equity ownership in the Company and failed to disclose such information to Plaintiff. Specifically, the preferred equity distribution carries a fifteen (15%) distribution return – an amount that is more than seven (7%) percentage points higher than Plaintiff's distribution rights – and entitles 7Acre to receive distributions prior to Plaintiff.

40.    Further, Defendants were aware that any change in the ownership percentages of the members required an amendment to the Operating Agreement, as well as the consent of all affected members, including Plaintiff.

41.    In addition, the Improper Sale Right provided 7Acre with complete control over the disposition of the Company's sole asset -- the Property -- and, therefore, over the very existence and business purpose of the Company.

42.    Accordingly, the change of control over the Property, as well as the issuance of the 7Acre Preferred Equity Investment, is in violation of Paragraph 8.2 of the Operating Agreement.

43.    Second, even assuming that the 7Acre Preferred Equity Investment could be considered an Additional Capital Contribution (which it is not), Defendants are in breach of the Operating Agreement since Defendants failed to follow the specific procedures set forth in the Operating Agreement for obtaining Additional Capital Contributions.

44.    To this end, the Operating Agreement specifically provides that Defendants were required to: (i) make a Capital Call to all members; (ii) wait five (5) days for each member to present their respective share of the contribution, and if a member does not present their respective share, then the amount not funded becomes a stated deficiency; (iii) notify the members as to the amount of any deficiency and that the members can elect to fund the deficient amount; and (iv) if

8

there is still a remaining deficiency, then Vesta has discretion to cover the deficiency by any means or methods in Vesta's discretion.

45.     Here, Defendants failed to follow the required process for an Additional Capital Contribution as outlined in Paragraph 6.2 of the Operating Agreement as Defendants did not issue a Capital Call notifying the members of the requested contribution, failed to provide a mandatory five (5)-day funding period, nor did they adhere to the required procedures for addressing any deficiencies.

46.     Rather, Defendants acted in secret by accepting the 7Acre Preferred Equity Investment which provided preferential ownership rights to 7Acre, along with the unconditional right to sell the Property in direct contravention to the Approval Rights Letter.

**II.     Breaches of the Approval Rights Letter**

47.     The Approval Rights Letter expressly provides that Stone, in his capacity as manager of Andover, maintains the Andover Approval Right on behalf of Plaintiff.

48.     Defendants breached and entirely contradicted the Approval Rights Letter by providing 7Acre with the Improper Sale Right.

49.     The 7Acre Preferred Equity Investment also granted 7Acre preferential distributions beyond the rights of Plaintiff, as well as significant control rights, including express rights that supersede those of the existing members including Plaintiff.

50.     Under no circumstances would Plaintiff have consented to the 7Acre Preferred Equity Investment.

51.     Upon information and belief, 7Acre is ready and willing to exercise the Improper Sale Right without the consent or approval of Plaintiff.

9

52.   Through the 7Acre Preferred Equity Investment, Defendants breached their contractual and fiduciary obligations by secretly conferring upon a third-party investor superior rights and control over the Company, thereby materially damaging Plaintiff and unlawfully altering the governance and ownership framework of the Company.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

53.   Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

54.   Defendants owe fiduciary duties to Plaintiff.

55.   Defendants have misused their control over the Company in order to benefit themselves rather than advance the purpose of the Company or Plaintiff.

56.   Defendants knowingly and willfully chose to ignore their contractual obligations by not obtaining Plaintiff's approval of the 7Acre Preferred Equity Investment and by failing to disclose the 7Acre Preferred Equity Investment to Plaintiff.

57.   Further, Defendants breached their fiduciary duties by accepting the 7Acre Preferred Equity Investment which provided preferential ownership rights in the Company to 7Acre, along with the unconditional right to sell the Property in direct contravention to the Approval Rights Letter.

58.   The Improper Sale Right and the creation of the 7Acre Preferred Equity Investment materially diluted and subordinated the Andover Ownership Interest, devalued Plaintiff's investment, deprived Plaintiff of its protections under the Operating Agreement and the Approval Rights Letter, and were designed to benefit 7Acre and Defendants at the expense of Plaintiff.

59.   By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for breach of fiduciary duty in an amount to be determined at trial, but not less than $3,000,000.00,

plus pre-judgment interest and post-judgment interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION
**Breach of the Operating Agreement and the Approval Rights Letter**

60.    Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

61.    The Operating Agreement and the Approval Rights Letter are valid and binding agreements between the Parties.

62.    Paragraph 5.2 of the Operating Agreement requires Defendants to act in good faith with respect to controlling, performing, and managing the Company as set forth in Paragraph 5.2 of the Operating Agreement.

63.    Pursuant to Paragraph 6.2 Operating Agreement, Defendants were also required to obtain approval of the members, including Plaintiff, before accepting an Additional Capital Contribution.

64.    Pursuant to Paragraph 11.6 of the Operating Agreement, Defendants were also required to obtain the approval of the members, including Plaintiff, before amending the Operating Agreement to alter ownership percentages, create new classes of ownership or change the control of the Company.

65.    Notwithstanding these express provisions, Defendants unilaterally accepted an undisclosed investment in the Company from 7Acre in exchange for preferred equity interests.

66.    Defendants' actions constitute a *de facto* amendment to the Operating Agreement that directly impacted Plaintiff's interests and rights in the Company.

67.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages including, *inter alia*, diluting Plaintiff's ownership interest, transferring substantial rights

to 7Acre, and fundamentally undermining the economic expectations that Plaintiff bargained for under the Operating Agreement.

68.    Moreover, pursuant to Paragraph 3 of the Approval Rights Letter, Vesta "shall not cause the Company to take any action listed without obtaining Stone's prior written approval (which shall not be unreasonably withheld, conditioned, or delayed)."

69.    Furthermore, the Approval Rights Letter expressly prohibits Vesta from causing the Company (or any subsidiary of the Company owning the Property) from "sell[ing], transfer[ing], assign[ing], convey[ing], exchange[ing], or otherwise dispos[ing] of a material portion of the Property" without the written consent of Stone.

70.    Notwithstanding these express provisions, Defendants surreptitiously provided 7Acre with the Improper Sale Right, which is entirely contradictory to the Approval Rights Letter.

71.    Upon information and belief, 7Acre is ready and willing to exercise the Improper Sale Right without the approval or consent of Plaintiff.

72.    The Improper Sale Right materially prejudices and damages Plaintiff.

73.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for breach of the Operating Agreement and the Approval Rights Letter in an amount to be determined at trial, but not less than $3,000,000.00, plus pre- judgment interest and post-judgment interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### Fraud

74.    Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

12

75.    Following the Stone Investment, Defendants knowingly and intentionally omitted material facts to Plaintiff concerning the ownership, capitalization, and governance of the Company.

76.    Unbeknownst to Plaintiff, Defendants surreptitiously created the 7Acre Preferred Equity Investment that secretly provided 7Acre with the Improper Sale Right, as well as a preferred equity interest in the Company.

77.    Upon information and belief, Defendants finalized and caused the 7Acre Preferred Equity Investment to be created and vested in or around June 2023 without prior notice to Plaintiff and in direct violation of Plaintiff's express contractual rights.

78.    Defendants had a duty to disclose all facts to Plaintiffs.

79.    Defendants intentionally concealed from Plaintiff the existence, terms, and effects of the 7Acre Preferred Equity Investment, including that 7Acre received, *inter alia*: (i) a separate preferred equity ownership class; (ii) a preferred return of fifteen percent (15%); and (iii) the Improper Sale Right.

80.    At the time Defendants concealed these facts, Defendants were fully aware that their representations and omissions to Plaintiff were false, and they made such misrepresentations and omissions with the intent to induce Plaintiff to continue relying on the validity of the Operating Agreement and Approval Rights Letter.

81.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions, as Plaintiff had no independent means to discover the existence or terms of the 7Acre Preferred Equity Investment, which were uniquely within Defendants' knowledge and control.

82. Further, Plaintiff reasonably relied on the Operating Agreement and Approval Rights Letter in that Plaintiff believed the membership structure was unchanged and that there was never a change in the control of the Company.

83. In reliance on these false assurances and concealments, Plaintiff continued to act as a member of the Company, refrained from objecting or enforcing its contractual rights, and took no protective measures to prevent the unauthorized alteration of the Company's ownership and governance structure.

84. As a result of Defendants' omissions, Plaintiff has suffered and continues to suffer material damages, including the dilution of its ownership interest.

85. By reason of the foregoing, Defendants are liable to Plaintiff for fraud in an amount to be determined at trial, plus interest, as well as the costs and fees associated with the Action, including reasonable attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Unjust Enrichment

86. Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

87. With the knowledge of Defendants, Plaintiff, through Stone, invested $6,000,000.00 into the Company.

88. Defendants have utilized their control over Plaintiff to surreptitiously create the 7Acre Preferred Equity Investment, which provides 7Acre with an entire separate preferred equity ownership class in the Company; (ii) a preferred equity distribution return of fifteen (15%) -- an amount that is more than seven (7%) in excess of the distribution rights of Plaintiff; and (iii) the Improper Sale Right.

89. Defendants failed to notify Plaintiff of the 7Acre Preferred Equity Investment despite having a duty to disclose such information.

14

90.    Upon information and belief, Defendants personally benefitted from funds that were created pursuant to the 7Acre Preferred Equity Investment.

91.    Defendants, through their control of the Company, have given preference to their own obligations, which resulted in diluting Plaintiff's ownership interest, transferring substantial rights to 7Acre, and fundamentally undermining the economic expectations that Plaintiff bargained for under the Operating Agreement and the Approval Rights Letter.

92.    Plaintiff has been damaged by Defendants' actions.

93.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for unjust enrichment in an amount to be determined at trial, but not less than $3,000,000.00, plus interest, as well as costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Declaratory Judgment

94.    Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

95.    An actual, existing bona fide and substantial legal case and controversy exists between Plaintiff and Defendants, and the Company's members are entitled to a judicial declaration regarding their rights under the Operating Agreement.

96.    Plaintiff, a member of the Company, desires to remove Defendants as Manager of the Company.

97.    As set forth above, Defendants have committed intentional acts against Plaintiff by surreptitiously creating the 7Acre Preferred Equity Investment for the primary purpose of securing a benefit for Defendants.

98.     Pursuant to the Operating Agreement, Defendants had an <u>express obligation</u> to act in good faith with respect to controlling, performing, and managing all business, affairs, actions, and decisions of the Company.

99.     Defendants breached their express obligations under Operating Agreement by, *inter alia*, (i) accepting the 7Acre Preferred Equity, along with the unconditional right to sell the Property in direct contravention to the Approval Rights Letter; (ii) blatantly failing to follow the required process for an Additional Capital Contribution as outlined in Paragraph 6.2 of the Operating Agreement; and (iii) providing 7Acre with the Improper Sale Right.

100.     Accordingly, without a declaration from the Court affirmatively finding that Defendants have committed a fraud against the Company and should be removed as the Manager, Plaintiff and the Company's members will be negatively impacted.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Attorneys' Fees**

101.     Plaintiff repeats and realleges each of the foregoing paragraphs of the Complaint.

102.     As set forth in Paragraph 11.4 of the Operating Agreement "in any legal action, arbitration, mediation, or other similar proceeding or action that is commenced to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to an award of its attorneys' fees and expenses as well as interest on any unpaid amount or claimed damages from the date claimed at the Interest Rate."

103.     As such, Plaintiff is entitled to payment of attorneys' fees under applicable law and the Operating Agreement.

104.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant for its attorneys' fees in an amount to be determined at trial, plus interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment.

16

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.      On the First Cause of Action, a judgment against Defendants for breach of fiduciary duty in an amount to be determined at trial, but not less than $3,000,000.00, plus pre-judgment interest and post-judgment interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

2.      On the Second Cause of Action, a judgment against Defendants for breach of the Operating Agreement and the Approval Rights Letter in an amount to be determined at trial, but not less than $3,000,000.00, plus pre- judgment interest and post-judgment interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

3.      On the Third Cause of Action, Defendants are liable to Plaintiff for fraud in an amount to be determined at trial, plus interest, as well as the costs and fees associated with the Action, including reasonable attorneys' fees.

4.      On the Fourth Cause of Action, a judgment against Defendants for unjust enrichment in an amount to be determined at trial, but not less than $3,000,000.00, plus interest, as well as costs and fees associated with the Action and the enforcement of any resulting judgment, including reasonable attorney's fees.

5.      On the Fifth Cause of Action, a declaration from the Court affirmatively finding that Defendants have committed a fraud against Plaintiff and the Company's members and removing Defendants as the Manager of the Company.

6.　　　On the Sixth Cause of Action, a judgment against Defendant for its attorneys' fees in an amount to be determined at trial, plus interest, as well as the costs and fees associated with the Action and the enforcement of any resulting judgment.

Date:  November 6, 2025                              Respectfully submitted,


/s/ *Seth A. Day*
Seth A. Day, OBA No. 20670
Kristen P. Evans, OBA No. 30210
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK  73102
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
sday@hallestill.com
kevans@hallestill.com
**ATTORNEYS FOR PLAINTIFF**


Joseph P. Cervini, Jr.*
Abbie Sebastianelli*
**CERVINI LAW GROUP PLLC**
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel: (917) 304-9231
jcervini@cervinilawgroup.com
asebastianelli@cervinilawgroup.com
***Counsel for Plaintiff to be Admitted Pro***
***Hac Vice***

21352044.1:017188.00001